UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20726-CR-UNGARO

UNITED STATES OF AMERICA,

v.

CARMELINA BARZAGA-VALLADARES, *et. al.*,

       Defendants.
_____/

### ORDER FINDING DEFENDANT CARMELINA BARZAGA-VALLADARES COMPETENT TO STAND TRIAL

      This matter was referred to the undersigned Magistrate Judge by) the Honorable Ursula Ungaro to Determine the Competency of Defendant Carmelina Valladares (D.E. No. 195).  Pursuant to this Order of Reference, I have considered the Psychological Report of Lazaro Garcia, Ph.D. dated 2/4/08; the Forensic Neuropsychological Evaluation Report of Michele Quiroga, Ph.D. dated 5/8/08; the Psychosocial Assessment of Prince R. Drago, L.M.H.C. dated 6/23/08; and the Neuropsychological and Competency Evaluation Report of Enrique M. Suarez, Ph.D. dated 8/4/08; as well as the testimony of Dr. Suarez and the argument of counsel at an evidentiary hearing held on September 3, 2008.  At the conclusion of the evidentiary hearing, the undersigned announced on the record her findings and conclusions that Ms. Carmelina Barzaga-Valladares is competent to stand trial.   This Order summarizes the proceedings and sets forth those findings and conclusions in greater detail.

      I. <u>BACKGROUND</u>

      Defendant Carmelina Barzaga-Valladares is charged in two counts of the presently pending Indictment with conspiracy to commit health care fraud, in violation of

18 U.S.C. § 1349 (Count 1); and with soliciting and receiving kickbacks involving a federal health care benefit program, in violation of 42 U.S.C. § 1320a-7b(b)(1) (Count 4).

The issue regarding Ms. Barzaga-Valladares' competency to stand trial first arose upon the submission by the defendant of the psychological report of Dr. Lazaro Garcia, and the United States' *ore tenus* Motion for an Order Directing Defendant Carmelina Barzaga-Valladares to Undergo a Psychological Examination to Determine Competency and Sanity, which was granted by the District Court (DE # 187).  The Court appointed Quiroga & Associates to perform the evaluation, and thereafter referred this matter to the undersigned Magistrate Judge to determine competency.

Upon receiving the Order of Reference, the undersigned conducted telephonic hearings with the parties on June 16, 2008; June 23, 2008; and June 30, 3008.  The parties jointly recommended that Ms. Valladares should undergo a third psychological evaluation pursuant to 18 U.S.C. § 4241.  This joint recommendation was based, in part, on the recent observations of Ms. Valladares' Probation Officer, Irma Botana, and upon concerns that Ms. Valladares may have decompensated since her last psychological evaluation; and, also based upon the fact that neither of the previous psychological reports expressly tested and addressed the defendant's competence to stand trial, but focused on her sanity at the time of the offense.[1]  The parties agreed that the third evaluation would be performed by Enrique Suarez, Ph.D.

---

[1] According to government counsel, Dr. Quiroga expressed the view that if the present decompensation was the result of the defendant failing to take medications, she would be able to make a determination of competency without further testing; but if the decompensation was due to other factors and/or additional specific testing was required, she believed that another psychologist should perform that testing since she had already issued a report which concluded the defendant was malingering, and this could have a negative impact on further testing by Dr. Quiroga.

The evaluation was performed, and Dr. Suarez' report, which found the defendant competent to stand trial, was provided to the Court. An evidentiary hearing was held on September 3, 2008, at which time only Dr. Suarez was called to testify. At the hearing, both counsel for the government and counsel for Ms. Barzaga-Valladares agreed that at the present time, Ms. Barzaga-Valladares is legally competent to stand trial.

## II. FRAMEWORK FOR ANALYSIS

Title 18, United States Code, Section 4241(a), provides that the Court shall order a hearing regarding a defendant's competency to stand trial "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The Court has the authority to order that a psychiatric or psychological examination be conducted, and that a report be filed with the court, prior to the date of such hearing. 18 U.S.C. § 4241(b). This examination, report, and hearing are to be conducted and prepared in accordance with the provisions of 18 U.S.C. § 4247. 18 U.S.C. §§ 4241(b), 4241(c).

Pursuant to 18 U.S.C. § 4247(c), report of examination shall include:

> (1) the person's history and present symptoms;
> (2) a description of the psychiatric, psychological, and medical tests that were employed and their results;
> (3) the examiner's findings; and
> (4) the examiner's opinions as to diagnosis, prognosis, and–
>     (A) . . . whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Once there is an evaluation, the proceedings are governed by 18 U.S.C. § 4241(d),

which provides that if, after a hearing, "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.... for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."  Thus, the initial burden of persuasion is on the defendant to establish by a preponderance of the evidence that he is not competent.

Thereafter, if there is an adjudication of incompetency, and the defendant is committed to the Attorney General as stated above, pursuant to 18 U.S.C. § 4241(e), the burden of persuasion shifts; *i.e.*, the court must find by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

### III.    THE PSYCHOLOGICAL REPORTS

Since the parties agree that the defendant is presently competent, in accordance with the evaluation by Dr. Suarez, which is the most recent evaluation and the only one which specifically addresses competency, the psychological reports are only briefly summarized in this Order.  The reports were admitted at the hearing, under seal based upon medical privacy concerns, as Exhibits one through four.

#### A.    The Evaluation by Lazaro Garcia, Ph.D. (Ex. 1)

Ms. Valladares was referred to Dr. Garcia for a psychological evaluation in

-4-

connection with this case by her attorney, based upon concerns over Ms. Valladares' mental state. Dr. Garcia examined Ms. Valladares on January 21, 24, and 30, 2008. Dr. Garcia based his evaluation on a personal history questionnaire, a psychological interview, the Wechsler Adult Intelligence Scale-III-Spanish Translation; Bender Gestalt Test II, Millon Clinical Multiaxial Inventory-III; Interview with Ms. Valladares' daughter, Sorgalim Sin, a telephone conference with Ms. Valladares' treating psychiatrist, Jose Valdivia, and a review of various records. According to the psychiatric history related by Ms. Valladares and her daughter, Ms. Valladares has been undergoing psychiatric treatment for approximately 20 years, and has been hospitalized approximately four times. The treating psychiatrist, Dr. Jose Valdivia, advised Dr. Garcia that he had diagnosed Ms. Valladares' with Major Depression Recurrent with Psychotic Features, and that she had been hospitalized from November 8 through 22, 2007, and December 7 through 24, 2007. Dr. Valdivia opined that she was depressed and experiencing visual hallucinations, but that she was, at that time, in a partial hospitalization program and was doing well. He did not know the last time Ms. Valladares had received psychiatric treatment prior to seeing him. It is unclear when Dr. Valdivia began treating Ms. Valladares, but the two hospitalizations that he described occurred after she was arrested in August 2007.

The report of Dr. Garcia notes that during the course of the examination Ms. Valladares was unable or unwilling to clarify inconsistencies in her answers. Her responses to the MCMI-III indicated a tendency to accentuate problem areas and symptoms, and she tended to present herself in an unfavorable manner. Dr. Garcia interpreted this as a cry for help as a result of her emotional turmoil. On the WAIS-III, Ms. Valladares obtained a Full Scale IQ of 60, which places her in the Extremely Low

range of intellectual functioning.  However, Dr. Garcia noted that this score is less meaningful because there were large discrepancies between the scores that compose either the Verbal scale or Performance scale.  On the Verbal Comprehension Index, she scored in the Low Average range, which Dr. Garcia felt was a better estimate of her verbal reasoning skills.

Dr. Garcia provided a diagnosis of Major Depression with Psychotic Features and Dementia due to Multiple Medical Conditions (despite the statement of her treating psychiatrist that he was unsure whether Ms. Valladares suffers from dementia since she shows inconsistent symptoms); as well as Mixed Personality Disorder, and a history of several medical problems.

Based upon the test results and interview, Dr. Garcia made the following conclusions:

1. Ms. Valladares suffers from multiple medical problems and her memory is poor and getting worse.  Her deteriorating cognitive functioning suggested the onset of dementia, although her treating psychiatrist has reservations about this diagnosis.  He is reluctant to place Ms. Valladares on a cognitive enhancing medication as she already takes several medications.

2. Ms. Valladares suffers from an underlying psychotic thought process. She reported hallucinations to this examiner as well as to her treating psychiatrist.  She has been hospitalized for psychiatric reasons and presently takes an anti-psychotic medication along with other psychiatric and medical medications.

3. Ms. Valladares' cognitive functioning is very poor.  Her scores on the IQ test and Bender Gestalt II were very low, and these scores are consistent with the way Ms. Valladares' daughter described her mother.  Clinical observations made during the evaluation are also consistent with these test findings.

4. Ms. Valladares has received psychiatric treatment and has been on SSI, for psychiatric reasons for several years prior to the alleged offense.  However, this examiner has no documents to

> corroborate her daughter's assertion, but her treating psychiatrist believes Ms. Valladares received treatment before she came to see him.
>
> 5. Some histrionic tendencies are likely present and this complicates the clinical picture.  However, Ms. Valladares fell during one of her visits to this examiner's office, always required assistance to walk, and her daughter had to assist her when she went to the bathroom on her last visit.
>
> 6. Because of these reasons stated above, it is the conclusion of the examiner that Ms. Valladares had little or no awareness of her wrongdoing at the time of the alleged offense.
>
> 7. Ms. Valladares' ability to continue living alone is poor.  She should be placed in a nursing home or assisted living facility that could provide 24-hour supervision.
>
> 8. Ms. Valladares should be referred to a neurologist to determine if she could benefit from cognitive enhancing medication.

Dr. Garcia did not administer any tests for malingering in connection with his evaluation.  Dr. Garcia also did not administer any tests specifically designed to determine whether Ms. Valladares was able to understand the nature and consequences of the proceedings against her or to assist properly in her defense, and he did not render an opinion as to her competence.

> B.   The Forensic Neuropsychological Evaluation by Michele Quiroga, Ph.D. (Ex. 2)

Dr. Quiroga conducted a neuropsychological evaluation of Ms. Valladares on April 1, 7, and 9, 2008 for the purpose of assessing her levels of cognitive and emotional functioning, as well as to rule out a dementia syndrome.  Dr. Quiroga administered the following tests: Folstein Mini Mental State Exam; Direct Assessment of Functional Status–Revised, Barona Formula For Calculating Premorbid IQ, Control Oral Word Association Test, Peabody Picture Vocabulary Test, Boston Naming Test, Benton Visual Form Discrimination Test, Wechsler Memory Scale–Third Edition, Trail Making Test: Part

A and B; Test of Memory Malingering, and Rey Fifteen-Item Test. In addition, Dr. Quiroga interviewed Ms. Valladares and her daughter; reviewed video and audio surveillance recordings which were obtained during the criminal investigation; and, reviewed the psychological report of Dr. Garcia.

Prior to beginning the evaluation, Dr. Quiroga explained the nature and purpose of the examination, and Ms. Valladares demonstrated a basic understanding, and agreed to participate.

Dr. Quiroga's report describes a significant history of medical problems and psychiatric treatment, which is incorporated herein by reference. Dr. Quiroga noted that although Ms. Valladares was polite and generally cooperative during the three examination sessions, her degree of effort and motivation was questionable since she displayed various inconsistencies during the course of the three sessions. In addition, the test results were inconsistent since she performed better on some more difficult test items than on simpler items. Despite the inconsistencies, Dr. Quiroga reported that "Ms. Valladares was observed to have the ability for logical thought processes, and was able to maintain conversations, with appropriate levels of understanding, as well as elaborate on themes during the clinical interview" (Ex. 2 at 5). Dr. Quiroga stated that on two separate measures of overall effort and malingering, Ms. Valladares performance was highly questionable since she obtained below chance scores. Based upon the serious questions as to effort and motivation to perform well, and Ms. Valladares' general inconsistencies in orientation and effort, Dr. Quiroga stated that the test results had to be interpreted with caution, and that no test of overall intellectual functioning was administered due to the questionable validity of such test results. In lieu of this, Dr. Quiroga provided an estimated level of intellectual functioning, and opined based upon

the Barona Formula for Calculating Premorbid IQ that Ms. Valladares' intellectual functioning was in the Average range.

Dr. Quiroga provided a Diagnosis of Malingering, Major Depressive Disorder, Recurrent: Severe Without Psychotic Features (*with a history of psychotic features*), and Rule/Out Cognitive Disorder, Not Otherwise Specified; as well as reporting various medical problems, and estimated her GAF as 48.

Dr. Quiroga provided the following recommendations and conclusions:

1. Based on the results of the current evaluation, as well as on audio and surveillance video recordings, and on a review of materials pertaining to the pending case, Mrs. Valladares is judged to have had awareness of her wrongdoing at the time of the alleged offense.

2. Given Mrs. Valladares' reported ongoing severe depressive symptomotology, it is recommended that she obtain a psychiatric follow-up consultation to assess the appropriateness of her current psychotropic medications. She may also benefit from psychotherapy sessions, in order to assist in treating her emotional symptomotology.

Dr. Quiroga did not administer any tests specifically designed to determine whether Ms. Valladares was able to understand the nature and consequences of the proceedings against her or to assist properly in her defense, and she did not render an opinion as to her competence.

C.   **Mental Health Concerns Expressed by The Pre-Trial Services Officer**

Ms. Valladares has been released on bond during the pendency of this case, and is being supervised by a U.S. Probation Officer (USPO) assigned to the Pre-Trial Services Unit. On June 9, 2008, the USPO submitted a memorandum reflecting that the defendant had discontinued private psychiatric treatment, and that monthly visits reflected that the defendant's physical health appeared to be deteriorating, and that during home visits she was found to be in bed asleep. The USPO reported that when the

defendant was awakened, she had poor concentration, and her speech was somewhat slurred and incomprehensible. The USPO opined that "the defendant's physical and mental health status impacts her ability to report as directed and that her competency is in question."

A follow-up memorandum was prepared by the USPO on July 18, 2008, which detailed the progress made by the defendant. On June 18, 2008, another home visit was conducted, and the defendant admitted that she had discontinued seeing her private psychiatrist, and her medications had not been refilled since April 2008. The USPO instructed the defendant to resume her psychiatric treatment.

On July 18, 2008, another home visit was made. The USPO reported that the defendant had resumed psychiatric care and had also returned to a day treatment program.[2] The defendant appeared alert and stable. Her medications had been recently filled, and the defendant stated that she was taking them as directed. In addition, the defendant was reporting telephonically as directed by the USPO.

D.     The Psychosocial Assessment of Prince R. Drago, L.M.H.C. (Ex. 3)

Mr Drago is a licensed mental health counselor employed by Healthy Connections CMHC, Inc. He provided a Psychosocial Assessment of Ms. Valladares dated June 23, 2008. The report noted that she had initially attended the partial hospitalization program at that facility from November 30, 2007 through December 7, 2007, following her hospitalization at Mount Sinai Hospital psychiatric unit on November 8, 2007. Her attendance was interrupted due to a fall that required medical treatment, and she was re-admitted from December 30, 2007 through March 13, 2008. At that time, she was

---

[2] The results of the initial assessment made when Ms. Valladares entered the program are described below in Section D.

discharged because she required another psychiatric hospitalization, which was triggered in part by worries related to legal problems. After her discharge from psychiatric hospitalization she was treated on an outpatient basis by Dr. Valdivia. The present assessment was performed at the request of Dr. Valdivia in order to avoid another psychiatric hospitalization since Ms. Valladares was deteriorating.

Mr. Drago concluded that Ms. Valladares presented severe symptoms of depression and of anxiety exacerbated by her pending trial and multiple medical problems. She had the capacity for active participation in all components of the partial hospitalization program, and was admitted to that program. The pre-admission assessment form reflects that Ms. Valladares' mood was depressed and anxious, her appearance and behavior were anxious and hyper-verbal, she was oriented as to person, place, time and date, her ability to concentrate was fair, and her insight and judgment were fair. The tentative diagnosis was Major Depression, Recurrent Severe. The assessment reflects that she required comprehensive treatment, and that there was a "reasonable expectation of improvement in the patient's disorder and level of functioning, which would be evident within two weeks of admission, as a result of the active provided treatment." (Ex. 3, last page).

   E.   <u>The Neuropsychological and Competency Evaluation by Enrique Suarez, Ph.D. (Ex. 4)</u>

Dr. Suarez conducted a forensic neuropsychological evaluation of Ms. Valladares on July 11, 23 and 24, 2008. His procedures included an interview; Mental Status Examination; Wechsler Adult Intelligence Test–Third Edition, Spanish Standardization; Test of Nonverbal Intelligence–Third Edition; Folstein Mini-Mental Status Examination; Halstead-Reitan Neuropsychological Test Battery; Dot Counting Test; Memory Fifteen-

Item Test; Test of Memory Malingering; Validity Indicator Profile; Minnesota Multiphasic Personality Inventory–Second Edition; Review of the Criminal Complaint, Indictment, and undercover audio-visual recording of alleged criminal activity; and, a review of the psychological evaluations of Dr. Garcia, Dr. Quiroga and Mr. Drago. The report prepared by Dr. Suarez was explained during his testimony at the evidentiary hearing.

According to the test results, Ms. Valladares' overall level of functioning was found to be in the Extremely Low range, with a full-scale IQ of 69. Her score on the Folstein Mini-Mental Status Examination suggested a moderate degree of cognitive impairment. Her performance on the Halstead-Reitan Neuropsychological Test reflected an impaired range of cerebral functioning. However, the severity of the impairments reflected by the battery of tests were inconsistent with her neuropsychological history and presentation.

The results of the Minnesota Mulitphasic Personality Inventory-Second Edition were not valid, since the responses were characterized by extreme exaggeration, in which a wide variety of rare and extreme symptoms were endorsed. Dr. Suarez interpreted these responses as resulting from Ms. Valladares' "indiscriminately claiming extreme psychological problems in an attempt to appear psychologically disturbed." (Ex. 4 at 9).

Four symptom validity tests were administered, and in the opinion of Dr. Suarez, the results of these tests unequivocally demonstrated that Ms. Valladares was malingering, and that she was deliberately choosing incorrect answers to make herself appear more impaired. Dr. Suarez explained this conclusion in detail at the evidentiary hearing, stating that in order to do so poorly she had to have known the correct answers in order to so consistently choose the incorrect answers. His testimony, as well as his

report, was detailed and compelling.  For example, the probability of randomly obtaining her low scores on the Test of Memory Malingering was approximately 1 in 2.7 billion.  The only possible explanation of the scores was that she knew the correct answer in order to give the wrong answer.  Therefore, Dr. Suarez concluded that the only significance of the other test results was that they established a floor concerning her mental impairments and abilities.  Based upon his diagnosis of malingering, It was not possible for him to provide an accurate diagnosis of her true condition.  Based primarily upon her history, Dr. Suarez also provided a diagnosis of "Unspecified Mental Disorder" (DSM-IV Code 300.9).

      Dr. Suarez questioned the validity of the test results and diagnoses provided by Dr. Garcia since Dr. Garcia did not administer any tests which were designed to objectively determine whether a person was malingering.  In addition, although Dr. Garcia opined that Ms. Valladares may be suffering from dementia, Dr. Garcia had taken the claims of Ms. Valladares at face value, and he did not administer the tests necessary to diagnose dementia; and, her treating psychiatrist had not diagnosed dementia.

      Dr. Suarez specifically tested Ms. Valladares regarding her competency to stand trial in this case, and he concluded that "she has the capacity to communicate well and assist her attorney, testify with relevance in her own behalf, and to manifest appropriate courtroom behavior."  In addition, her answers to his questions reflect that she understands the nature of these proceedings and the charges against her.  Dr. Suarez rated Ms. Valladares as "Acceptable" in each of the following categories:

1. **Appreciation of the charges or allegations**: Assessment of the defendant's understanding of literal knowledge of the charges or allegations.  It is important the defendant understands that they are being accused, the consequences of which may be detrimental to him/her.

2. **Appreciation of the range and nature of possible penalties: if applicable, which may be imposed in the proceedings against him/her**: Assessment of the defendant's concrete understanding and appreciation of the conditions and restrictions which could be imposed on them if found guilty and of their possible duration.

3. **Understanding of the adversary nature of the legal process**: Does the defendant understand that (a) the responsibility of his/her attorney is to assist them (b) the State Attorney's responsibility is to prove his/her guilt; and (c) the Judge is impartial and protects his/her rights as well as those of the State and (d) the jury is impartial.

4. **Capacity to disclose to his/hercounsel facts pertinent to the proceedings at issue**: Assessment of the defendant's capacity to give consistent, rational, and relevant account of the facts surrounding his/her alleged offense or the accusations against him/her. Intelligence, perceptual capacity, memory, and validity of any claimed amnesia should be assessed. Consideration should be given to potential disparity between what the defendant may disclose to a clinician and what they may share with their attorney.

5. **Ability to manifest appropriate courtroom behavior.** Assessment of the defendant's current behavior and probable behavior when exposed to the stress of courtroom proceedings. Evaluate the defendant's beliefs and attitudes toward the judicial system.

6. **Capacity to testify relevantly**: Assessment of the defendant's ability to testify with coherence, relevance and independence of judgment including both cognitive and affective factors which may impact on their ability to communicate.

In sum, Dr. Suarez concluded that Ms. Valladares is competent to proceed.

IV. **LEGAL ANALYSIS**

As stated above, these proceedings are governed by 18 U.S.C. § 4241(d), which provides that if, after a hearing, "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and

-14-

consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.... for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."

In the case at bar, the undersigned finds that the defendant has been treated for psychiatric problems for a long period of time, that she has been diagnosed by her treating psychiatrist as suffering from "Major Depression Recurrent with Psychotic Features" and is receiving medication to treat this condition.  In addition, Dr. Suarez provided a diagnosis of "Unspecified Mental Disorder."  Thus, she has established that she is suffering from a mental disease or defect.

However, she has failed to establish that this "mental disease or defect" renders her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.  On the contrary, the evidence in this record clearly establishes that she is able to understand the consequences of these proceedings and that she is capable of assisting properly in her defense.

The undersigned notes that defense counsel does not challenge the defendant's competency to proceed at the present time, although she does contend that the defendant suffers from a significant mental impairment.

V.      CONCLUSION

Therefore, based upon the foregoing analysis, and considering the record as a whole, it is hereby

**ORDERED and ADJUDGED** that Defendant Carmelina Barzaga-Valladares is competent to stand trial and there is no reason delay further proceedings in this case.

**DONE and ORDERED** in Chambers in Miami, Florida on September 14, 2008.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies to:**
　　The Honorable Ursula Ungaro, United States District Judge
　　All counsel of record via CM/ECF